[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Richard Greene and the defendant Gayle Greene were married on March 28, 1987. Mr. Greene's date of birth is October 9, 1932. Ms. Greene's date of birth is March 30, 1960. It is Mr. Greene's third marriage. He has four children, two from his first marriage and two from his second marriage. It is Ms. Greene's first marriage. There are no minor children of this marriage.
Mr. Greene owned three parcels of real estate at the time of the marriage, all bordering the green in the historic district of Guilford, Connecticut. The first of these, 21 Whitfield Street, housed one of his businesses, The Guilford Greene Gallery, a gift shop. The plaintiff had owned this property at first with his mother and stepfather. When his mother died during the marriage, the property became his alone. For a period of 10 to 15 years before the marriage, the plaintiff had owned 25 Whitfield Street, the first floor space of which was rented and used as a restaurant. For about the same period of time, the plaintiff had also owned 29 Whitfield Street, which housed the second of the plaintiff's businesses, the Greene Art Gallery. All three of the buildings have space used as residential apartments on the upper floors. The fair market value of 21 Whitfield Street is $250,000; of 25 Whitfield Street is $250,000; and of 29 Whitfield Street is $290,000.
At the time of the marriage, the plaintiff derived income from renting the commercial and residential space in these three buildings, and from operating the gift shop and art gallery through a corporation called the Guilford Greene Gallery, Inc. There was only modest mortgage debt on any of these properties. CT Page 8199 The plaintiff also had a child support obligation for his two younger children and had a significant regular expense connected with visitation, since they lived in France with his second wife.
The defendant met the plaintiff in the summer of 1985. She had ridden her bike from her parents' home nearby to the art gallery to look around. The plaintiff offered her a job. At the time the defendant was employed as an assistant to an executive at Bayer A.G., formerly Miles Laboratories, in West Haven. She began working part-time for the plaintiff in the art gallery on weekends while she continued to work her regular job. They began an affair later that summer which helped precipitate the end of the plaintiff's marriage to his second wife.
The plaintiff moved to New York during late 1985 and early 1986, having accepted a job at the Metropolitan Museum. In June of 1986, she returned to Guilford and moved in with the plaintiff in the Fall. They married the next Spring.
The plaintiff and the defendant traveled extensively during the year of their courtship and the first years of their marriage. They went to Greece, Barbados, Dominican Republic, London, Paris, and to Zermatt, Kitzbuhl, Aspen, and Jackson Hole to ski. They entertained. They dined out frequently. They furnished their apartment with fine art and decorative objects.
The plaintiff and the defendant each drew about $20,000 per year for their joint personal expenses out of the plaintiff's properties and corporation. The defendant continued to work in the art gallery and expanded it to include a frame shop. The plaintiff ran the business enterprises. The plaintiff was not particularly competent at business, however, and the defendant even less so. They jointly made a series of unfortunate financial decisions which have now created serious cash flow problems for the plaintiff.
The first was an attempt to buy a grand home. The defendant had urged the plaintiff throughout the marriage to buy for them a country home so that they could move out of their small but stylish apartment on Whitfield Street. They house-shopped frequently. They settled on a lavish six bedroom home on five acres with a pond, in Essex, Connecticut, priced at $475,000. The plaintiff borrowed $60,000 through a new mortgage on 29 Whitfield Street most of it in order to put a deposit on the Essex property. The contract was signed and the deposit paid, but the CT Page 8200 deal fell apart and the deposit was refunded. The plaintiff did not repay the note on the mortgage, but rather he and the defendant used the money to pay their mounting expenses.
The second was the decision to purchase an undeveloped rear lot that adjoins the plaintiff's three parcels of real estate. The lot, known as 63 Broad Street, was bought in 1989 for $275,000. The purchase was financed by a refinance of the mortgage on 29 Whitfield Street. Within a year, the plaintiff and defendant sold a piece of the lot for $75,000, a sum which was also used to support their lifestyle. The remaining parcel is long and narrow and badly situated for development. Its value is now $130,000.
The third was a decision to expand the art gallery business. The defendant who was interested in art sought to attract a more sophisticated clientele. Although she devoted much energy to the inventory and marketing side of the business, she did nothing to segregate or even keep track of its separate expenses. Her claim that the art gallery made a profit while she ran it is entirely without foundation. Indeed it appears that the art gallery has never made a profit on its own but has been subsidized by the gift shop. Nor did the opening of the framing operation under her auspices have any impact on the profitability of the business.
The other decision was to open a restaurant called Bistro on the Green. The previous restaurant that had rented the premises at 25 Whitfield Street went out of business and many months of seeking a new tenant were unsuccessful. In 1991 the parties purchased some of the remaining restaurant equipment from the former owner and opened Bistro on the Green. While the defendant assisted in the design and concept of the restaurant, she had no role in the actual operation of the restaurant. The plaintiff formed a new corporation of which he was the sole shareholder called Bistro on the Green, Inc. to operate the restaurant. It was a sore point between the parties that the plaintiff did not designate the defendant a co-owner of this corporation. While the Bistro has been a physically attractive addition to the Greene complex of businesses, it, like the art gallery, has consistently lost money. The court finds that the only value of the business is its used equipment, under $20,000.
Shortly after the restaurant opened in 1991, the defendant returned to school. She took mathematics courses at the University of New Haven to prepare herself to apply to the Yale CT Page 8201 School of Organization and Management. Her application was accepted and she began a two year course of study in September of 1992, graduating in the spring of 1994 with a degree called a Masters of Public and Private Management from Yale. By then, the parties had separated, and this action had been filed. The defendant's job search was not initially successful. She was awarded $425 per week in alimony pendente lite, later reduced to $200 per week. She has been working since September 1996 as a writer for the A E cable channel and earns $30 per hour, for a gross weekly income of $900. Notwithstanding her claim that her employer limits the number of hours per year for which she can be compensated, given her education and her recent earnings history the court finds her earning capacity to be $900 per week.
Also before the court as a discrete issue is the plaintiff's motion to modify the pendente lite alimony order, which the plaintiff had sought to have heard earlier this year but which the court postponed until time of trial, with the issue of retroactivity specifically reserved. The plaintiff asserts that after the defendant obtained her employment in September 1996, the circumstances of the parties had so changed financially that the alimony ought to have been terminated. The court finds the evidence of such a change of circumstances to be compelling and enters an order that alimony terminate as of the time the plaintiff was prepared to go forward on his motion in April.
The plaintiff and the defendant each have many complaints about the other which they posit as the reasons for the breakdown of the marriage. The plaintiff was disappointed and hurt that the defendant disliked and could not get along with his children, particularly the younger ones when they came to visit. After several years of living beyond their means, the plaintiff felt that they could no longer afford to do so and attempted to cut back and attend to his businesses. The defendant was unsympathetic with this view. There were occasions when each was physically aggressive toward the other, but this was rare. The plaintiff hit the defendant on one occasion. The defendant hit the plaintiff on several occasions. The defendant felt the plaintiff sometimes drank too much in social situations, and that he was inattentive to her and generally irresponsible.
In fact, the plaintiff has been especially irresponsible in record-keeping. He has never kept inventory records, records of loans to the businesses or among them, or balance sheets for any of the rental properties. Although the defendant cites this as CT Page 8202 evidence that the plaintiff is trying to hide assets from the court and from her, the court finds that this has been the plaintiff's practice for years. Despite the defendant's claims that she improved the organization and profitability of the businesses, she appears to have been even less competent than the plaintiff in understanding how to keep proper accounts. There is no evidence that the plaintiff has any undisclosed assets. In fact what has kept the entire Greene enterprise afloat has been the income generated by the real estate and the modest profits from the gift shop. These were owned and operated by the plaintiff long before he ever met the defendant.
During the course of this short marriage (the return date is December 14, 1993) the parties accumulated many fine, expensive home furnishings which they amicably divided upon their separation. The defendant, now 37 years old, has a Masters Degree from Yale, paid for during the marriage. She has only modest personal debt. She is engaged in a career. The plaintiff has been under an obligation to pay her alimony for almost three years.
The defendant is 64 years old. The 29 Whitfield Street property is the subject of a mortgage foreclosure proceeding because his cashflow has been insufficient to meet the mortgage payments. The mortgage was placed on the property largely in order to buy the Broad Street parcel. The plaintiff needs to take immediate steps to reorganize his personal and business finances in a more professional way.
The court finds that neither party is more at fault than the other for the breakdown of this marriage. In considering all of the factors in Conn. Gen. Stat. Sec. 46b-81 and 82, the court orders the following:
1. There shall be no alimony to either party.
2. The defendant shall be entitled to the ownership of the Alfa Romeo automobile and all bank accounts in her separate name listed on her financial affidavit, free of any claim or demand by the plaintiff.
3. The plaintiff shall be entitled to the ownership of the two Ken Davies paintings previously ordered held in escrow, free of any claim or demand by the defendant.
4. The defendant shall immediately transfer to the plaintiff CT Page 8203 and release by quitclaim deed all her right, title and interest in and to the Broad Street property.
5. The plaintiff shall be entitled to the ownership of the three parcels of real estate on Whitfield Street, and ownership of the shares, assets and accounts of all of the businesses, free of any claim or demand by the defendant. The defendant is hereby ordered to transfer to the plaintiff any and all rights or claims she has or may have arising out of any business or employment relationship with the plaintiff or any of his corporations.
6. The court finds an arrearage of alimony up to April 1997 of $7000, and orders the plaintiff to pay the entire arrearage on or before December 1, 1997.
7. As a further division of property, the plaintiff is ordered to pay the defendant the sum of $10,000, on or before December 1, 1997.
8. The plaintiff is ordered to pay counsel fees and expenses on behalf of the defendant in the sum of $23,000 on or before December 1, 1997.
9. The plaintiff shall return to the defendant the Swedish twin beds.
Patty Jenkins Pittman, Judge